Robert W. FINLEY et al., Plaintiffs in
Error,

v.

The BOARD OF COUNTY COMMISSION-
ERS OF OKLAHOMA COUNTY, State of
Oklahoma, Defendants in Error.

No. 36633.

Supreme Court of Oklahoma.

Nov. 8, 1955.

Rehearing Denied Dec. 20, 1955.

Ames, Daugherty, Bynum & Black, and Johnson, Gordon, Cook & Cotter, and Ted D. Foster, Jr., Oklahoma City, for plaintiffs in error.

Roger H. Swan, Asst. County Atty., Oklahoma City, for defendant in error.

WILLIAMS, Vice Chief Justice.

This action was commenced by the Board of County Commissioners of Oklahoma County, hereinafter referred to as plaintiff, against Robert W. Finley and others, hereinafter referred to as defendants, to condemn .22 acres of land for highway and road purposes. Defendants are the owners of the Rail Fence Tourist Court located south of Oklahoma City on the west side of U. S. Highway 77, and the .22 acres of land involved in this proceeding is a strip of land across the front of the property on which the Rail Fence Tourist Court is located. Some time after the institution of the action, Rail Fence Tourist Hotel Company, a corporation, made application to be made a party defendant as lessee of the property involved, which application was granted. Both plaintiff and defendants. objected to the report of commissioners assessing the value of the property taken and the damages to the remainder at $10,050, and demanded a jury trial.

· Upon trial being had, the jury returned a verdict fixing the total amount of damages sustained by the appropriation of the property involved at $5,589. The court then requested the jury to return an advisory verdict with respect to the apportionment of the damages between the defendant owners of the property and the defendant lessee, whereupon the jury found that the defendant lessee had suffered no damage and the defendant property owners had sustained all the damages awarded in the amount of $5,589. The court thereupon entered judgment for defendants in the amount of $5,589 and further adjudged that the defendant property owners take all of the award and the defendant lessee take nothing, from which judgment all the defendants appeal.

As their first proposition of error, defendants contend that the trial court erred in permitting plaintiff's three expert witnesses to testify as to the market value of the property prior to the appropriation, when such testimony was not based on a personal examination of the premises prior to the appropriation, or upon a hypothetical question propounded by plaintiff. In support of such proposition, defendants assert that an expert witness may testify as to the value of property when his opinion is based upon a personal examination thereof or pursuant to a hypothetical question, but not otherwise. Conceding, without deciding, the correctness of such assertion, it does not follow that the court erred in admitting the testimony complained of. The record reveals that all three expert witnesses offered by plaintiff testified that they were familiar with the property involved, that they had made a thorough examination and investigation of the premises and knew what the value of the property was on August 1, 1953 (the agreed date of the taking herein). The opinion of these experts was, therefore, based upon personal examination and investigation. Defendants' complaint, how-

ever, goes to the fact that the personal examination of these experts was not made until after the date of the taking. It is apparently defendants' contention that the opinion of an expert as to the value of the property prior to the taking must be based upon a personal examination made prior to the taking. They cite no authority to that effect, however, and we know of none. Defendants argue that to hold otherwise would allow testimony of an expert based on hearsay, which cannot be done. A complete answer to such argument is found in the case of H. & H. Supply Co. v. United States, 10 Cir., 194 F.2d 553, 556, wherein the court said:

"It may be conceded, as contended, that both Dooley and Sidwell relied in part upon hearsay sources in reaching their conclusions as to value, but this does not make their testimony as to value inadmissible. The rule is well established that an expert may testify as to value, though his conclusions are based in part, or even entirely, upon hearsay evidence."

It should be noted that defendants' contention is directed solely toward the opinion of plaintiff's experts as to the value of the property prior to the taking. No contention is made that such experts were not qualified to give an opinion as to the value of the remainder of the property after the taking. It is also worthy of note that plaintiff's three experts appraised the value of the property before the taking at $242,000, $246,000 and $242,000, respectively, whereas one of the two experts called by defendants appraised the value of the property prior to the taking at $240,000. Since all three of plaintiff's experts placed the market value of the property prior to the taking at a higher figure than did one of the two experts called by defendants, it is difficult to perceive what harm could have been suffered by defendants by the admission of such evidence even if it had not been competent. The real difference in the opinions of the experts called by plaintiff and those called by defendants was as to the value of the property remaining after the taking, upon which point the ex-

perts called by plaintiff were unquestionably qualified to testify.

■ In any event, we are committed to the rule that the question of opinion evidence is addressed to the sound discretion of the trial court, and its ruling that a witness is sufficiently qualified will not be disturbed on appeal unless it clearly appears that this discretion has been abused. Town of Sallisaw v. Priest, 61 Okl. 9, 159 P. 1093; Ada Steam Laundry v. Kitchens, 196 Okl. 235, 164 P.2d 877; Delaney v. Morris, 193 Okl. 589, 145 P.2d 936. We find no such abuse of discretion here.

■ As their second proposition defendants assert that the value of the property appropriated and injury to the remainder must be assessed irrespective of any benefits from the improvement. This is undoubtedly a correct statement of law, since article 2, section 24 of the Constitution of the State of Oklahoma so provides. Defendants contend that instruction No. 10 given by the court and certain portions of the argument of counsel for plaintiff direct the jury to offset the benefits accruing by virtue of the improvement of the highway against the damages sustained by defendants and that such constitutes reversible error. With such contention, however, we do not agree. The court, in its instruction No. 10, merely told the jury what use might lawfully be made of the strip of land taken and what rights with reference to the use of the land taken still remained in defendants. Such instruction was certainly pertinent in assisting the jury in arriving at a determination of the extent of damage suffered by defendants as a result of the taking and in no way directed the jury to offset benefits accruing against the damages sustained. Furthermore the court, in instructions 3 and 11, specifically advised the jury that the amount of damages sustained by defendants must be determined without considering benefits, if any, accruing to the remainder of the land by reason of the improvement of the highway. We have repeatedly held that the instructions should be considered as a whole without giving any paragraph an interpretation which any of the other para-

graphs shows was not intended and that if the instructions considered together fairly submit the issues to the jury, no reversible error exists. Newell v. Musgrove, 129 Okl. 207, 264 P. 156; Collum v. Stokes, 146 Okl. 176, 293 P. 1036; Grayson v. Brown, 166 Okl. 43, 26 P.2d 204. We think the instructions given by the court in this case, when considered as a whole, fairly and fully cover the law applicable to the case, in so far as the point here under consideration is concerned.

With reference to the argument of counsel complained of, we find nothing therein which suggests to the jury that any benefits accruing should be offset against the damages sustained. We therefore find no merit in defendants' second proposition.

As their third proposition, defendants allege that elements of damage, where private property is taken or damaged for public use, include all damages or injuries arising from the exercise of the right of eminent domain, which cause a diminution of the values of private property, whether this results directly to the property, or is but an interference with the rights the owner has to the legal and proper use of the same, and that the court erred in refusing their requested instructions to that effect. As their fourth proposition defendants allege that property owners are entitled to be compensated for any damage sustained by reason of the change of the established grade, in the construction of a public improvement, and that the court erred in refusing their requested instruction to that effect. In their fifth proposition defendants assert that in determining damages done by the construction of a public improvement it is proper to consider the existence of excavations, embankments and obstructions to the natural flow of surface water caused by the construction, and that the court erred in refusing to give their requested instruction to that effect. As their sixth proposition defendants assert that the rights of abutting owners, in streets or highways, differ from the rights of the general public; the abutting owners having the right of access, light, air, and view, to have the street or highway kept open as a public street for the benefit of their property, and anything adding to the value of the abutting owner by reason of the street and affecting the abutting owner's special right in the street; that the abutting owner's access to his property is not limited to the part of the street on which the property abuts, but his right is that of reasonable access in either direction; and that the court erred in not so instructing the jury. As their seventh proposition, defendants assert that in ascertaining the amount of damages, it is proper, among other things, to consider the inconvenience and annoyance likely to arise in the orderly exercise or conduct of the enterprise which interferes with the use and proper enjoyment of the property by the owner, and which sensibly impairs its value, and that the court erred in not giving their requested instruction to that effect. These five propositions are so closely related they will be discussed together.

All five of the requested instructions referred to relate to the consequential damages allegedly resulting to defendants as a result of the construction of the highway improvement, and it must be conceded that as abstract statements of general principles of law they are substantially correct. It is defendant's contention that by refusing to give these requested instructions and by giving instruction No. 11, the court in effect precluded the jury from considering these consequential damages and prevented defendants from recovering therefor. Instruction No. 11 given by the court is as follows:

"You are further instructed that there is submitted to you for your consideration the amount of damages that the defendants have suffered because of the appropriation of the .22 acre for highway purposes, and you are instructed that in arriving at the damages sustained by them, you are to fix the value of the land actually taken, which is .22 acre, and the damages done to the remainder of the tract by reason of the appropriation of their land for right-of-way or other incidental road purposes; and it is proper for you to arrive at your verdict by determining what the fair market value of

the whole tract was immediately before the taking, including the part taken, and then subtracting from such amount the fair market value of the remaining part of the tract not taken, considering same as it was immediately after the taking, to-wit, August 1, 1953, without considering benefits, if any, to the remaining part of the tract by reason of the improvement in the highway. The difference between the value of the property owned by the defendants before and after the taking, subject to such condition, will be the amount that your verdict should be.

"Further in this connection, you are instructed that any award you may make herein will be in *one sum and amount only,* for the use and benefit of all the defendants, regardless of their interests either as owners or leaseholder, it being the duty of the Court itself to make the proper divisions or apportionments."

It is the general rule that where part only of a tract of land is condemned, as is the case here, the measure of damages is the difference between the fair market value of the whole property at the time of condemnation and the fair market value of the property left after the taking. Tulsa County Drainage Dist. No. 12 v. Stroud, 198 Okl. 688, 181 P.2d 1000. Instruction No. 11 given by the court, therefore, correctly states the measure of damages in this case. Such instruction does not, as contended by defendants, deprive them of consequential damages resulting from the construction of the highway improvement, however. In determining the market value of the property left after the taking, all damages which may be reasonably anticipated to result from the use of the portion taken for the purposes for which it is condemned must be taken into consideration. State v. Adams, 187 Okl. 673, 105 P.2d 416. And where the improvement has been constructed and is in operation at the time of the trial, evidence as to consequential damages actually resulting from such construction and operation is properly admissible and must also be taken into consideration in determining the market value of the property left after

the taking. State ex rel. City of Ardmore v. Winters, 195 Okl. 243, 156 P.2d 798; Incorporated Town of Sallisaw v. Priest, 61 Okl. 9, 159 P. 1093. In other words, the consequential damages claimed by defendants are compensable and evidence relating thereto is properly admissible in evidence, but the measure of such damages is the amount in which the market value of the property left after the taking is depreciated thereby, such market value being determined as of immediately after the taking but in the light of the damage known to have resulted to the property at the time of the determination or which may be reasonably anticipated to result. The trial court properly admitted defendants' evidence relative to their alleged consequential damages and likewise properly instructed the jury in instruction No. 8 that the testimony admitted relative to certain alleged consequential damages would be considered by it in determining the market value of the property left after the taking. Since the instructions given by the court fully and properly present the case to the jury, we find no error in the refusal of defendants' above referred to requested instructions. Bogle v. Bumgarner, 195 Okl. 188, 156 P.2d 813.

■ As their eighth proposition, defendants contend that the court erred in sustaining an objection to the testimony of the witness Clyde Johnson. Mr. Johnson is an accountant and his testimony was offered for the purpose of showing the amount of profit accruing to the defendants from the property in question for the years 1950, 1952 and 1953, and the months of January and February of 1954. Defendants argue that the evidence discloses that the highway upon which their property abuts was closed and barricaded for a period of from August 3, 1953, to November 19, 1953, while the highway improvement was under construction; that such closing of such highway constituted a temporary condition which caused a depreciation in the rental value of the property during the period of the obstruction; that such damage resulting from such temporary obstruction is a separate element of damage and is compensable separately from the damage

sustained by reason of the taking of the property actually taken; that evidence of gross sales and net profits before and after construction of a public improvement is admissible for the purpose of establishing rental value, and that the court therefore erred in excluding the evidence offered relative to profits. In support of such argument, defendants cite Oklahoma City v. Collins-Dietz-Morris Co., 183 Okl. 264, 79 P.2d 791; Chicago, R. I. & P. Ry. Co. v. Larwood, 175 Okl. 96, 51 P.2d 508; Chicago, R. I. & P. Ry. Co. v. Prigmore, 180 Okl. 124, 68 P.2d 90; and Chicago, R. I. & P. Ry. Co. v. Jennings, 175 Okl. 524, 53 P.2d 691.

The last above cited cases all involve situations where there was no taking of property, but only a damaging of property resulting from a blocking of ingress and egress or some similar situation. The case at bar, however, involves a taking of a portion of a tract of land. As hereinbefore stated, the measure of damage in such case is the difference between the fair market value of the whole property at the time of condemnation and the fair market value of the property left after the taking. And in determining the market value of the property left after the taking, all damages which may be reasonably anticipated to result from the use of the portion taken for the purposes for which it is condemned must be taken into consideration. Certainly where, as here, the property taken is taken as a part of a plan for widening and resurfacing a public highway, it is only reasonable to anticipate that such highway must be blockaded during the time such construction is in progress, and any damage resulting from such temporary blockading must therefore be taken into account in determining the market value of the property left after the taking. Such damage is, therefore, not compensable separately from the damage sustained by reason of the taking as contended by defendants.

We have held that evidence is admissible as to gross sales and the net profits of a business to aid the jury in determining the depreciation in the market value of the property taken or damaged. Chicago, R. I. & P. Ry. Co. v. Larwood, supra. We have

also held, however, that the exclusion of such evidence is not necessarily error since such evidence could serve no purpose other than to be considered as an additional factor, or element, toward showing reasonableness of market value already established by other evidence. Kelly v. Oklahoma Turnpike Authority, Okl., 269 P.2d 359. We also held in that case that the admissibility of evidence of value in condemnation cases is more largely within the trial court's discretion than is the determination of other issues, so that error predicated upon the exclusion of certain evidence will not be sustained except in cases of manifest error. In the case at bar the court admitted a wide range of evidence relative to the value of the property involved, and all of the experts testifying for both sides testified that they considered the income from the property in arriving at their conclusions as to the market value. It was also brought out by the evidence that many factors entirely unrelated to the taking of a portion of the property could affect the income produced by the property by its use as a tourist court, such as new courts springing up creating additional competition, new highways diverting traffic from existing routes, constant housing development causing a gradual decline in tourist court business, and other similar factors, which factors were actually shown to exist in relation to the property here involved. Under such circumstances the probative value of the evidence offered relative to decreases in profits would be so small as to render the exclusion of such evidence at the most only harmless error.

As their ninth proposition defendants assert that where trial is had after the public improvement has been completed, it is proper to assess damages on the basis of the facts existing at the time of trial. They then repeat the contention made in connection with propositions three to seven, inclusive, that instruction No. 11 deprived defendants of the consequential damages sustained subsequent to the appropriation. Such contention was disposed of in the discussion of propositions three to seven above and no further comment in that regard is necessary.

As their last proposition defendants contend that consequential damages, sustained by separate estates or interests in property damaged by reason of the construction of a public improvement, should be assessed and that the court erred in requiring the jury to return a lump sum verdict and in refusing to submit separate verdicts as to the defendant owners and the defendant lessee for the jury to return. Defendants cite no authority for such contention, and the general rule appears to be to the contrary. In Grand River Dam Authority v. Gray, 192 Okl. 547, 138 P.2d 100, 102, we said in the body of the opinion:

"The fallacy in the argument of the plaintiff lies in the assumption that when different estates in property are involved the extent of the damage done to the separate estates involved must be ascertained and compensation made therefor. This is not the rule. On the contrary, as said in State ex rel. McCaskill v. Hall, 325 Mo. 165, 28 S.W.2d 80, 81, 69 A.L.R. 1256:

" ' "When there are different interests or estates in the property, the proper course is to ascertain the entire compensation as though the property belonged to one person and then apportion this sum among the different parties according to their respective rights. The value of property can not be enhanced by any distribution of the title or estate among different persons or by any contract arrangements among the owners of different interests. Whatever advantage is secured to one interest must be taken from another, and the sum of all the parts cannot exceed the whole." 2 Lewis on Eminent Domain (3d Ed.) section 716, 1253.

" ' "The situation of the estate and the manner of its occupation are doubtless to be taken into consideration in estimating the injury caused by disturbing that occupation. But between the public and the landowner it is but one estate. The public right is exercised upon the land itself, without regard to subdivisions of interest by which the subject is affected through the various contracts of individual owners. The public cannot be expected to forego its right to take property for public uses because the exercise of that right will defeat private contracts; nor is it reasonable that losses arising from the failure of such contracts, which otherwise might furnish grounds of damage between the individual parties, should measure the compensation to be rendered for the property so taken. Such a rule would seriously impair the public right. A fair compensation for the property taken and injury done, ascertained by general rules, is a substitute to the owners for that of which they are deprived. That is the whole of the transaction with which the public is concerned. The apportionment is merely a setting out to the several owners of partial interests of their corresponding rights in the fund which has been substituted for the property taken." Edmands v. City of Boston, 108 Mass. 535, 544.

" 'It is settled, however, that condemnation proceedings are in rem, against the property, for which the award, when made, stands as belonging to those formerly having interest in the property and in the same proportion.' "

Defendants concede the correctness of the foregoing rule, but argue that it is not applicable here because this case involves consequential damages, and then reiterate the already disposed of contention that the court's instructions deprived them of having their consequential damages considered by the jury. We find no merit in such contention and deem further discussion of the same unnecessary.

Judgment affirmed.

JOHNSON, C. J., and DAVISON, HALLEY and HUNT, JJ., concur.

WELCH, CORN, BLACKBIRD and JACKSON, JJ., dissent.