**STATE of Texas, Appellant,**

v.

**Lola R. VILLARREAL, Appellee.**

No. 13406.

Court of Civil Appeals of Texas.

San Antonio.

Dec. 10, 1958.

Rehearing Denied Jan. 7, 1959.

1. 26A Words and Phrases, May—In Statutes.

Will Wilson, Atty. Gen., H. Grady Chandler, Joe G. Rollins, Asst. Attys. Gen., for appellant.

Sharpe, Cunningham & Garza, Brownsville, for appellee.

POPE, Justice.

State of Texas has appealed from a jury verdict for $11,200 damages in condemnation of a lot located in the City of San Benito, Cameron County. State, the condemnor, complains that the judgment of the county court should be set aside because the trial court improperly admitted testimony concerning the value of a going business conducted on the property condemned, because two of condemnee's witnesses on land values were not qualified as experts, and because the verdict is excessive.

Condemnee, Villarreal, operated a grocery store in a stucco building located on a lot in San Benito where the State plans to construct a freeway. In the course of the hearing, State offered a witness who testified that he reached his evaluation of $4,200 for the lot and building by use of three

methods for appraising property. One of these methods he termed the "economic" or "income" method. He was cross-examined about this method, and the essence of his testimony was that the income of the property was relevant to the use of the land and is a factor in reaching the market value of the land itself. State did not object to this evidence. The witness testified that, taking the use into consideration, he estimated the land and building were worth about $30 per month on a rental basis. By way of cross-examination, State undertook to show that the monthly profits of the grocery store were less than those claimed by condemnee.

Condemnee, to prove the value of the property taken, called William Long as a witness, when the following transpired:

"(Counsel for Condemnee) Now Mr. Long, there is in evidence here that there is a business in the City of San Benito, grocery store business, that is being condemned and there is evidence here that this particular business, grocery store, has been selling on an average of seven hundred dollars per month for the last five years and that their profit on those sales is twenty percent. With that information could you give me what the value of that business is as of right now, sir?

"(Counsel for State): I object, Your Honor, it is immaterial and irrelevant and it is not an issue to go on the market value of the property condemned.

"(Counsel for Condemnee): I want to make a statement for the record. I am not introducing this testimony of Mr. Long to show market value, but as one of the factors in arriving at a market value because there is no question here that the business is being taken.

"(Counsel for State): The property is being taken, not the business, they can move the business across the street.

"(Counsel for Condemnee): I am talking about the value of the business there.

"The Court: Overruled."

Long further testified to a method used by the Internal Revenue Department for determining the value of good will of a going concern, or, as he stated, the "value of a business as such." He said: "It can be used in determining the fair market value of the business outside of those assets which are the tangible assets, the earning power or the earning ability of the business." The State again objected and the court again overruled the objection.

The State was taking the whole property, but that did not include a taking of the business conducted on that property. Herndon v. Housing Authority of City of Dallas, Tex.Civ.App., 261 S.W.2d 221. The question that sometimes arises is whether evidence of profits is admissible at all, but that is not the precise situation here presented. When the State offered its evidence of value it proved, among other methods, the extent of the business conducted on the property. This factor was limited to proof of the nature of the use and value of the real property. Condemnee offered the evidence to prove the value of the business itself. The witness was directly asked, "What the value of that business is as of right now, sir?" The evidence was offered to prove "that there is a business in the City of San Benito, grocery store business, that is being condemned." When the State objected, counsel again stated that his object was to show one of the factors in arriving at a market value, "because there is no question here that the business is being taken."

The vice and harm of this is found in the stated purpose of its offer. It was a clear declaration that it was to prove the damages to the business, an improper element, and an entirely different matter from proof of income as a factor to prove the value of the real property. From this, the jury were informed and surely must have believed that they were called upon to determine not only the value of the real property but also the damages to the business. In this there was error. Marshall v. City of Amarillo, Tex.Civ.App., 302 S.W.2d 943; State v. Parkey, Tex.Civ.App., 295 S.W.2d 457; Herndon v. Housing Authority of City of Dallas, supra; Reeves v. City of Dallas, Tex.Civ.App., 195 S.W.2d 575. Condemnee reasons that the error was invited by State's full cross-examination of condemnee's witnesses about profits; and also that the improper evidence was cumulative of other improper evidence to which the State did not object. When the State was cross-examining condemnee's witnesses and when the other profit evidence was admitted, the evidence was aimed at proof of the value of the property actually taken. But when Long testified, he was proving damage to the business, and the State timely objected to that improper evidence.

The State urges that condemnee's witnesses Mr. E. B. Duarte and Mrs. I. H. Morrow, were not qualified. The points have no merit, since both testified to long experience in the area as realtors and appraisers, and the State voiced no objection during the trial to their qualifications.

The State's other point is that the verdict is excessive. But for the fact that some of the evidence included improper elements of damages to the business, there is ample evidence to support the amount of the verdict. Had the testimony been free of this damaging improper evidence, we would not regard the verdict as excessive.

The judgment is reversed and the cause remanded.