**STATE of Oklahoma ex rel. DEPARTMENT OF HIGHWAYS of the State of Oklahoma, Plaintiff in Error,**

**v.**

**G. W. BOWLES and Hazel Bowles, husband and wife, Community State Bank of Tulsa, Oklahoma, Defendants in Error.**

**No. 42298.**

Supreme Court of Oklahoma.

June 30, 1970.

John Paul Walters, Chief Counsel, by Court Pappe, Floyd W. Taylor, Legal Intern, Oklahoma City, for plaintiff in error.

Smith, Brown & Martin, Tulsa, for defendants in error.

BERRY, Vice Chief Justice.

The primary issue involves a jury award of compensation as damages for property taken under eminent domain proceedings. A strip of land along a service (frontage) road adjacent to an existing highway was taken. Although defendants' access to the service road was not diminished, convenient means of ingress and egress from the service road were eliminated. Although means of ingress and egress from the service road to the highway were provided at other locations, the changes resulted in detriment to the market value of defendants' property.

The State Highway Department commenced this action as plaintiff to condemn and sever a strip 100 feet long and 23 feet wide along the front of defendants' property, upon which they operated a drive-in restaurant. The property faced upon the south service road to the Skelly By-Pass in Tulsa. Necessity for this action was to convert Skelly By-Pass into a limited access highway. This required widening the By-Pass and closing an intersection. Also closed were a crossing off median at South 25th Street West (about 600 feet east from defendants' property), and an exit from the By-Pass onto the service road about 660 feet west of defendants' property. The adjacent By-Pass and service road ran east and west. After the conversion means of ingress and egress from limited access highway to service road was changed to approximately one mile to the west and a half mile east.

Condemnation proceedings were regularly conducted, the commissioners made appraisal and filed their report, and both parties filed demands for a jury trial. Trial to a jury resulted in a verdict for defendants of $21,000.00 as condemnation damages. Plaintiff has brought this appeal.

Only matters pertinent to the issues raised will be considered. The appeal is presented under four propositions, the first of which is:

"The closing of 25th Street West Avenue was not a condemnation of defendants' rights of access and egress, but a valid exercise of the Police Power, giving the defendants no rights to compensation."

As mentioned, South 25th Street West which lies about 600 feet east of defendants' property was closed, thus destroying the most immediate means of ingress to defendants' business.

Plaintiff cites and relies upon statute (69 O.S.1961 §§ 11.1(a), 11.3 and 11.4, now 69 O.S.Supp.1968 § 1301 et seq.) showing a commission or governing body has authority to designate and establish existing streets or highways as limited access facilities, and to close existing streets or highways to protect such limited access facility. On this aspect defendants take no issue.

Plaintiff urges defendants are entitled only to reasonable access to the converted highway via a frontage road. However, that defendants have no compensable right to the flow of traffic in front of their property, and a landowner's access to his property is all that is compensable.

Plaintiff cites two cases from the Supreme Court of Kansas: Brock v. State Highway Commission, 195 Kan. 361, 404

P.2d 934; Ray v. State Highway Commission, 196 Kan. 13, 410 P.2d 278. These cases present plaintiff's theory on appeal, and what is undoubtedly advanced as a new theory respecting condemnation in this State. These cases deny compensation to landowners in instances when access to a limited access highway from a frontage road is changed to landowner's detriment, without the taking or severing of landowner's property. These decisions did not involve actual taking of property. Without considering what our conclusion might be under the same factual circumstances, we conclude those decisions are neither in point nor persuasive herein.

The issue sought to be presented properly is combinable for discussion with the second contention:

"Defendants retain reasonable access to their property and therefore should not be entitled to damages for impairment of access thereto."

Plaintiff argues if defendants are entitled to compensation for closing South 25th Street West 600 feet from their property, what is the result to property owners 650 feet or 1000 feet from access. Plaintiff then cites Springville Banking Company v. Burton, 10 Utah 2d 100, 349 P.2d 157. In that case there was no taking of property but only interference with access to the property. Plaintiff relies upon language to the effect that costs of changing highways, to control traffic and protect the traveling public, would become prohibitive if abutting landowners were allowed compensation for damages in such cases. Plaintiff urges that selfish interests of a few cannot be given priority over the general public good. We are cognizant of the practical aspect of this reasoning. However, we do not believe it applicable in the disposition of the present case.

Plaintiff's petition states that .05 acre of defendants' land be severed together "with all abutters rights, including all rights to access from the remaining portion of defendants' land onto the LIMITED ACCESS HIGHWAY to be constructed on the above described" property. The petition prays appointment of commissioners to appraise defendants' injury resulting from the taking, including "any and all damages or injury that may be sustained directly or indirectly to the remaining lands of the defendants" by reason of appropriation.

During trial plaintiff attempted to exclude from consideration of the jury any evidence tending to show damages resulting from the closing of South 25th Street West and closing of entrance to the service road at a point 660 feet west of defendants' property. Plaintiff's contention appears bottomed upon reasoning expressed in Ray, supra, at 410 P.2d page 283:

"Where property owners are afforded complete ingress and egress to a frontage road upon which their property abuts, and they have reasonable access via the frontage road to main traveled lanes of a controlled access highway, any inconvenience suffered by them is merely non-compensable circuity of travel. * * *"

Consistent with this theory plaintiff excepted to court's Instruction No. 9. Plaintiff urges this instruction made the closing of South 25th Street West and the right of free and convenient access thereto a part of the condemnation proceedings, and when Instruction No. 9 was given along with Instruction No. 7, the jury considered damages that were non-compensable.

Instruction No. 7 states:

"You have heard the parties contend on the one hand that the available new access roads, or entryways to the Drive-in will not afford reasonable access for the continued operation of the Drive-in with the same economic value as it was operated; * * *

"In this connection you will give consideration to the respective contentions of the parties only insofar as you find that the market value of the defendants' property is affected by these changes of access. * * *"

Plaintiff argues the landowners' reasonable access is the only compensable interest, and

the access available for the traveling public cannot be considered.

Plaintiff's theory in substance, seems to be supported by decisions from other jurisdictions which hold a property owner has no right of compensation for diversion of traffic resulting from relocation or re-routing of a highway. This reasoning is inapplicable to the present case. Here we are concerned with actual taking and severing of property for the specific purpose of establishing a limited access highway and, in the process, destroying the landowners' convenient access to the main highway, although providing other, less convenient means of access.

■ Specifically referring to Instruction Nos. 7 and 9, these instructions did put in issue for the jury's consideration those damages which were consequential, due to the relocation of the access from the main highway to defendants' property.

Independent research on the particular point raised by plaintiff has led us to many cases and textbooks. In Orgel on Valuation Under Eminent Domain, Vol. 1 § 57, pp. 265, 266, the author discusses various methods courts have used to limit the owner's recovery of damages due to severing part of the land, while excluding damages due to the presence and operation of public works. Summarizing, the author states that under any rule to so limit recovery hardly does more than provide a rough and arbitrary division in most cases. The author further comments, "Small wonder other courts, in a similar fact situation, throw up their hands at making any distinction and allow the owner to recover for the entire damage that has been done to his remaining property by reason of the adjacent public improvement." This Court has approved compensation for damages caused by construction of adjacent public works. Oklahoma City v. Vetter, 72 Okl. 196, 179 P. 473; St. Louis & S. F. Ry. Co. v. Ledbetter, 83 Okl. 78, 200 P. 701.

In State ex rel. City of Ardmore v. Winters, 195 Okl. 243, 156 P.2d 798, this Court held:

"2. The measure of damages for taking a part of a tract under the power of eminent domain is the fair cash market value of the land taken at the time it was taken together with such depreciation in the market value of the land not taken as may be reasonably anticipated to result from the taking and from the proper construction and operation of the project for which the land was condemned.

"3. Where a city condemns land to be used with other land for the construction and operation of an airport, and leases it to the United States Government, and the latter then constructs and operates the airport, the city is liable in the condemnation proceedings for damages caused by the proper construction and operation of the airport."

This case pronounces the rule consistently applied in numerous decisions, including State ex rel. Department of Highways v. Robb, Okl., 454 P.2d 313; Mid-Continent Pipeline v. Emerson et ux., Okl., 377 P.2d 565; Finley v. Board of County Commissioners, Okl., 291 P.2d 333.

■ In State v. Robb, supra, 454 P.2d 315, we stated:

"For a better understanding of the basic problem involved, we note that Section 24 of Article 2 of the Constitution of the State of Oklahoma provides, insofar as pertinent here, that:

" 'Private property shall not be taken or damaged for public use without just compensation * * *;'

"and that, where, as here, a part only of a tract of land is condemned and damages are sought for the value of that taken and consequential damages to that not taken, the measure of damages is the difference between the fair market value of the whole property immediately before the taking and the fair market value of the portion left immediately after the taking, and evidence to establish additional damages beyond that is not admissible, although evidence may be admitted of specific factors which con-

tribute to the depreciation in fair market value. * * * "

This case was tried and presented to the jury for determination of damages to property based upon the difference in fair market value before and after taking. This measure of damages has been approved many times by this Court, as in State ex rel. Dept. of Highways v. Weaver, Okl., 297 P.2d 549, wherein we held:

"Where a part only of a tract is condemned and damages are sought for the value of that taken and consequential damages to that not taken, the measure of damages is the difference between the fair market value of the whole property immediately before the taking and the fair market value of the portion left immediately after taking; and while evidence to establish any additional damage beyond that is not permissible, evidence may be admitted of specific elements which contribute to the depreciation of the market value."

■ The taking or damaging of free or convenient access to landowner's property, however, does appear under the rulings of this Court to be compensable. In Oklahoma Turnpike Authority v. Chandler, Okl., 316 P.2d 828, we held:

"An owner of land abutting a public road which is closed so the means of ingress and egress from one direction is destroyed, and the owner is left in a cul-de-sac, suffers a special injury for which he may be compensated in damages, although he has access to public highway over another slightly circuitous road."

Neither party cites any case precisely passing upon this issue in relation to limited access highways and our independent research has led to none. We conclude, however, the issue has been resolved indirectly by this Court. To disallow consideration of consequential damages in the present case would be inconsistent with our previous rulings in eminent domain proceedings, viz., Chandler case, supra.

Defendants rely upon State ex rel. Dept. of Highways v. Burden, Okl., 338 P.2d 154, as being directly in point. Under plaintiff's theory, however, there is a distinction in that Burden's access was interfered with by placement of curbing which limited former access to his property; whereas in the case before us the actual access to the frontage road was left open as before. However, we find the reasoning in the Burden case persuasive.

■ We conclude and hold the trial court did not err in admitting evidence, and instructing the jury, relative to consequential damages to show the market value of the land at the time taken, with such depreciation in market value of the land not taken as may be reasonably anticipated to result from the taking for proper construction and operation of the project for which the land was condemned.

Plaintiff's third proposition is:

"The trial court committed repeated and compound error in allowing into evidence testimony concerning profits and income of the business conducted on the property by the defendants."

■ Plaintiff then urges that under condemnation proceedings just compensation does not include damages for loss of business profits. Citing 16 A.L.R.2d 1113; Oldfield v. City of Tulsa, 170 Okl. 329, 41 P.2d 71; Nichols on Eminent Domain, Vol. 2 § 5.76, pp. 179 to 182, and State v. Villarreal (Tex.Civ.App.), 319 S.W.2d 408. Admittedly this is the general rule.

■ The evidence shows defendants' witnesses testified as to gross volume of business both before and after the conversion to a limited access highway. The trial court, in respect to this testimony, admonished the jury it was allowed only for the limited purpose of establishing market value of the land. Plaintiff's contention is not new in this Court. In Finley v. Board of County Commissioners, supra, we said:

"We have held that evidence is admissible as to gross sales and net profits

of a business to aid the jury in determining the depreciation in the market value of the property taken."

In this respect, the instruction to the jury was definite as to the purpose of this evidence. The record neither supports plaintiff's contention that loss of profits was considered by the jury, nor indicates defendants received any compensation for such loss. We hold the trial court did not err in admitting evidence showing gross sales of defendants' business before and after taking of the property, to aid the jury in determining market value of defendants' property before and after the condemnation proceedings.

■ The last proposition asserts trial court erred in allowing certain testimony, and thereafter changing his ruling and admonishing the jury to disregard such evidence. Plaintiff neither supports this contention with authority nor by the argument demonstrates wherein plaintiff was prejudiced. We hold this is insufficient to present the assignment for review. See Gaskins v. State ex rel. Dept. of Highways, Okl., 425 P.2d 979; Reed v. United States Hoffman Machinery Corp., 193 Okl. 370, 143 P.2d 809; Erwin v. Harris, Okl., 371 P.2d 902.

■ Plaintiff's reply brief also urges the court erred in not instructing the jury that before defendants were entitled to compensation for loss of access, the jury had to believe defendants did not have reasonable access. Plaintiff fails to support this somewhat different contention with any citation of authority. As stated under proposition 4 above this is insufficient to present this assignment for review.

Plaintiff also urges the limited access highway is a new phenomenon which cannot be governed adequately by present case law controlling land acquisition for conventional highways. In this connection we have dealt with the issues with that proposition in mind, and have treated this case as one of first impression. However, as stated, we have concluded sufficient prece-dent has been pronounced heretofore which supports our decision upon this issue.

■ Argument that a practical approach to a modern problem requires changing our decisional law by developing an entirely new concept based upon exigencies of the time as respects limited access highways is unpersuasive. This is true particularly when the problem is viewed from the standpoint of Constitution, Art. II § 24, and the decisional law developed under that constitutional guaranty. Whether a new concept of the law be needed for the general public good rests peculiarly with the Legislature. If a problem exists it should not be resolved by judicial fiat.

The trial court's judgment should be and hereby is affirmed.

All Justices concur.