STATE of Oklahoma, ex rel. DEPARTMENT OF TRANSPORTATION, Appellant,

v.

Denzil A. HOOD and Rebecca Hood, husband and wife; First National Bank of Rush Springs, and the Grady County Treasurer, Appellees.

No. 78482.

Court of Appeals of Oklahoma, Division No. 1.

Jan. 12, 1993.

Rehearing Denied March 2, 1993.

Certiorari Denied May 3, 1993.

Morris Bell, Becky McDown, Oklahoma City, for appellant.

B. Wayne Dabney, Chickasha, for appellees.

### MEMORANDUM OPINION

GARRETT, Judge:

This is an appeal from a condemnation action in which Appellees Denzil A. Hood and Rebecca Hood (the Hoods) were awarded judgment against Appellant Department of Transportation (DOT) in the amount of $200,000.00 for the taking of a strip of property owned by the Hoods. The sum of $34,750.00, the amount of the award of the Commissioners, was deposited with the Court Clerk, and it was ordered that the Hoods should recover the sum of $165,250.00 from DOT. The Hoods ran a business on the property which was a grocery store and gasoline station on Highway 81 in Rush Springs, Oklahoma.

DOT contends first that:

In a condemnation proceeding held for the purpose of determining just compensation for the taking of private property for public use pursuant to Article 2, Section 24 of the Oklahoma Constitution, evidence designed to recover compensation for a reduction in the value of a business enterprise being conducted upon the land taken, or remaining land not taken, is inadmissible, and a demurrer to the evidence should be sustained.

DOT contends that the trial court repeatedly allowed testimony of the value of the business enterprise being conducted on the land not taken and that it was clear that the Hoods were seeking compensation for an alleged reduction in the value of the business enterprise itself. Thus, it contends, its demurrer to the evidence should have been sustained. It cites two cases which it claims stand for the rule that such testimony is improper. These cases are *State ex rel. Department of Highways v. Bowles,* 472 P.2d 896 (Okl.1970); and *State of Oklahoma ex rel. Department of Highways v. Robb,* 454 P.2d 313 (Okl.1969). The Hoods disagree with DOT's interpretation of the cases, arguing instead that they stand for authority which allows exactly the type of testimony which was admitted at the trial in the instant case.

It was held in *Robb,* supra, at page 317:

We hold that within the exercise of sound judicial discretion by the trial court evidence concerning the income and profits from a business being conducted on the property involved is admissible, in a condemnation proceeding involving the just compensation provided for in Section 24 of Article 2 of the Constitution of the State of Oklahoma when private property is taken or damaged for public use, as bearing upon the question of the fair market value of such property, although it is not admissible for the purpose of establishing a separate item of damages for loss of business profits.

■ Section 24, Article 2, of the Oklahoma Constitution provided at the time of the taking, December 31, 1985, herein:

Private property shall not be taken or damaged for public use without just compensation. Such compensation, irrespective of any benefit from any improvements proposed, shall be ascertained by a board of commissioners of not less than three freeholders, in such manner as may be prescribed by law ... In all cases of condemnation of private property for public or private use, the determination of the character of the use shall be a judicial question.

DOT argues in its brief that if evidence of business income and profits is even potentially admissible, it must bear on the question of the fair market value of the real property involved. However, if the

evidence is offered for the purpose of establishing the value of the real property, including the business, and to recover compensation for an alleged reduction in the value of the business, or loss of business profits, it is inadmissible. DOT contends the instant case is an example of the kind of abuse that *Bowles*, supra, and *Robb*, supra, seek to prevent. DOT refers us to testimony in which witnesses were asked about the "value of his store" and "value of his business". It contends that the verdict of $200,000.00 is not supported by the evidence presented by either side unless consideration was given to inadmissible evidence of the value of business and lost profits.

The Hoods agree as to the rule stated by DOT, but contend that the evidence presented was properly admitted. They cite *Finley v. Board of County Commissioners*, 291 P.2d. 333, 339 (Okl.1955), which states the rule as to the correct measure of damages in cases involving a taking of a portion of a tract of land:

> [T]he measure of damage in such case is the difference between the fair market value of the whole property at the time of condemnation and the fair market value of the property left after the taking....
>
> We have held that evidence is admissible as to gross sales and the net profits of a business to aid the jury in determining the depreciation in the market value of the property taken or damaged....

*Finley* involved a case in which evidence of profits and sales was excluded by the trial court. The Supreme Court held that it was not necessarily error to exclude it in light of all of the other evidence admitted on that issue. However, the rule regarding the measure of damages is still the law today. See *Bowles*, supra, and *Robb*, supra. We also note that in *Bowles*, *Robb*, and *Finley*, the Supreme Court approvingly noted the trial court's admonishments and instructions which explained the limited purpose of such evidence, i.e., "its effect

upon the fair market value of the entire tract immediately before the taking and/or the fair market value of the remaining portion of the tract immediately after the taking, and the resulting difference between those market values." *Robb*, supra at 317. In the instant case, the trial court repeatedly admonished the jury in a similar way. Although DOT complains that the admonishments were insufficient and, in fact, became even more damaging, we cannot say that the evidence was improperly admitted.

Next, DOT contends the trial court erred in instructing counsel to use the date after construction as the "after value" in measuring damages. The Hoods respond that the court correctly instructed the jury of the correct date of taking as December 31, 1985, and that a reference to the date after construction is taken out of context by DOT. This appears to be a correct statement when consideration is given to Instruction number 5 given by the court:

> You are instructed that the proof for the measure of damages or just compensation in this case is the difference between the fair market value of the property owned by the defendants immediately before the appropriation or the taking of the property on the 31st day of December, 1985, and the fair market value of the defendants' [Hoods'] property immediately after the appropriation or the taking of the property.

It appears that the parties and the trial court all agreed during these proceedings that the date of taking is December 31, 1985,[1] and this is the date found in the above instruction. The completion of construction was mentioned by the trial court in another context during the testimony of a banker about an appraisal that was done on the property when the construction was completed.

■ Finally, DOT contends it was prejudicial error to allow the Hoods to refer to

---

1. DOT deposited the sum of $35,425.00, representing the amount of the Commissioners' award and fees, with the Court Clerk of Grady County on December 30, 1985. However, the date of December 31, 1985, has been the date used by the court and the parties as the date of taking.

the highway project as having "limited access". It contends that a "limited access highway" is defined by statute [2] and is not applicable to this case. The Hoods respond that such references were to restricted or diminished access to the business once the construction began. The evidence shows that before the taking, there was access to the Hoods' store across the two lane highway from either the northbound or southbound lanes. After the taking, only the southbound traffic had direct access to the business. The northbound traffic had to continue approximately ¼ to ½ mile to a turnaround and return south in order to turn off the highway into the parking lot. There was also testimony that during the construction, there was dirt work and excavation done on the property. The dirt was not packed down, and it created a quicksand effect during the slightest rain, one of the Hoods' witnesses, Mr. Brown, testified. He said that "it was almost dangerous at times to try to leave the highway and get to his parking lot". He further stated "that most customers felt as I did, that on a lot of occasions it simply wasn't worth the hazard of getting in and out of the parking lot. It was more convenient to shop elsewhere." The Hoods' sales dropped off to a level below their monthly expenses and overhead, and they lost the business through foreclosure.

The Supreme Court stated, in *Finley,* supra at 339, in reference to determining market value of the property left after the taking:

> [A]ll damages which may be reasonably anticipated to result from the use of the portion taken for the purposes for which it is condemned must be taken into consideration. Certainly where, as here, the property taken is taken as a part of a plan for widening and resurfacing a public highway, it is only reasonable to anticipate that such highway must be blockaded during the time such construction is in progress, and any damage resulting from such temporary blockading must therefore be taken into account in determining

the market value of the property left after the taking. Such damage is, therefore, not compensable separately from the damage sustained by reason of the taking as contended by defendants.

In the instant case, consideration was properly given to the difficulty of ingress and egress to the Hoods' property in arriving at market value.

The Hoods request this Court to award them appeal related attorney fees and costs. The request is granted. See 66 O.S.1991 §§ 55, 56. This case is remanded to the trial court to conduct an evidentiary hearing to determine a reasonable attorney fee and to enter judgment accordingly.

AFFIRMED AND REMANDED.

ADAMS, P.J., and JONES, J., concur.

**2.** 69 O.S.1991 § 225:
   A street or highway especially designed for through traffic, and over, from, or to which

neither owners nor occupants of abutting lands nor other persons have any right or easement of access, light, air, or view.